**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

STEPHEN PRESSLER, on behalf of himself                                           PLAINTIFF
and all other similarly situated employees

v.                                       No. 4:09CV00676 JLH

FTS USA, LLC                                                                                    DEFENDANT

**OPINION AND ORDER**

The plaintiff brings this action on behalf of himself and others similarly situated against his employer, FTS USA, LLC, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* Before the Court are two separate motions: the plaintiff's motion for conditional certification of a collective action pursuant to the FLSA and the plaintiff's motion for leave to file a first amended complaint. For the following reasons, the Court denies the plaintiff's motion for conditional certification and grants the plaintiff's motion for leave to file a first amended complaint.

**I.**

FTS is a Delaware limited liability company with corporate offices in Dallas, Texas. FTS, which was formed in July 2006, is owned by its parent company, UniTek USA, LLC (d/b/a "UniTek Global Services"). FTS does not have a dedicated human resources or payroll department; these functions are performed by UniTek. Personnel files of FTS employees are maintained at UniTek's offices, and FTS payroll and human resources information is stored on UniTek's software. Elizabeth Downey, the Chief Administrative Officer of UniTek, also has human resource, payroll, risk, safety, and training responsibilities for FTS.

FTS provides residential and commercial cable installation services to cable providers at approximately thirty locations across the country. At some of these locations, FTS operates a

warehouse where it stores equipment used by FTS technicians for installing and repairing cable service. When FTS started, there was a generic warehouse position that included all warehouse employees responsible for orders, equipment, inventory, and fleet. Some employees who held the generic warehouse position were classified as exempt from the FLSA and were paid on a salary basis without overtime; other employees in the generic warehouse position were classified as nonexempt and were paid on an hourly basis with compensation for overtime, if applicable.

As FTS grew, it saw a need to create more specialized positions from the generic warehouse position. Sometime in late 2007, FTS dropped the generic warehouse position entirely and started using other designations for warehouse employees. Currently, there are a total of three different designations a person could hold while working in an FTS warehouse: warehouse manager, warehouse supervisor, or warehouse assistant.

According to the job descriptions currently used by FTS, warehouse managers are responsible for "managing all aspects of daily warehouse activities and personnel." (Def.'s Ex. C, p.2.) They work with management to ensure that warehouse performance goals are met, establish productivity goals for assigned locations, evaluate warehouse operations workflow, and promote good housekeeping and safety. (*Id.*) A warehouse manager must demonstrate a number of skills including but not limited to analytical thinking, problem solving, technical skills, customer service, interpersonal skills, oral and written communication, teamwork, leadership, quality management, business acumen, cost consciousness, ethics, organizational support, strategic thinking, judgment, motivation, planning and organizing, and professionalism. (*Id.* at 3-4) (listing twenty-seven essential competencies for warehouse managers). A warehouse manager must also possess a bachelor's degree and have two to three years of related experience or training or the equivalent combination

of education and experience. (*Id.* at 5.) At FTS, warehouse managers have always been classified as exempt from the FLSA and are compensated on a salary basis with no overtime pay. Consequently, FTS does not track the number of hours that warehouse managers work.

Warehouse supervisors act under the direction of the warehouse manager and supervise "daily warehouse activities and personnel." (Def.'s Ex. D, p.2.) Warehouse supervisors oversee the receiving and stocking of equipment and products; reconcile inventory imbalances; read work orders, shipping orders, and requisitions; and make recommendations to the warehouse manager pertaining to the allocation of materials and equipment to contractors. (*Id.*) A warehouse supervisor must demonstrate competencies in problem solving, technical skills, customer service, interpersonal skills, oral and written communication, teamwork, quality management, diversity, ethics, organizational support, judgment, motivation, planning and organizing, professionalism, quality, safety and security, adaptability, attendance, dependability, and initiative. (*Id.* at 3-4) (listing twenty-one essential competencies for warehouse supervisors). A warehouse supervisor must also possess a high school diploma or general education degree ("GED"), one to three months of related experience or training, or the equivalent combination of education and experience. (*Id.* at 3.) Prior to 2009, warehouse supervisors were classified as exempt from the FLSA and were compensated on a salary basis with no overtime pay. (Downey Dep. pp. 63-65.) Since approximately the beginning of 2009, warehouse supervisors have been classified as nonexempt employees. (*Id.*)

Warehouse assistants, acting under the direction of the warehouse manager, "assist in warehouse duties by preparing project materials before operating a delivery box truck to fulfill orders." (Def.'s Ex. E, p.2.) Warehouse assistants must demonstrate a number of competencies, and they must also have a high school diploma or GED, one to three months of related experience or

training, or the equivalent combination of education and experience. (*Id.* at 4.) Warehouse assistants have always been classified as nonexempt from the FLSA, are compensated on an hourly basis, and receive overtime pay.

Steven Pressler worked for FTS from July 2008 to November 2009. (Pressler Decl. ¶ 2.) Pressler was hired to work out of the Little Rock, Arkansas, field office as a quality control technician. (*Id.* ¶ 3.) As a quality control technician, Pressler was classified as exempt from the FLSA and did not receive overtime compensation. Pressler claims that, after about a month of doing quality control work, he began assisting Gary Hall with warehouse work. (*Id.* ¶ 4.) He also claims that, after Gary Hall was terminated, Pressler "began working as the 'warehouse supervisor' a/k/a 'warehouse manager' and was paid a fixed amount of money each week for this work even though Pressler regularly worked more than forty (40) hours in a work week." (*Id.* ¶ 5.) According to FTS designee Elizabeth Downey, Pressler was directed to perform some of the duties usually reserved for warehouse managers, such as managing inventory and supervising technicians' use of the inventory; however, he was never hired as a warehouse manager, warehouse supervisor, or warehouse assistant or formally promoted or transferred to any of these positions. (Downey Decl. ¶¶ 7-8.) She also alleges that Pressler continued to perform his job as a quality control technician while performing his duties in the warehouse. (*Id.* ¶ 9.)

On December 9, 2009, Gabriel King, who worked for FTS in Memphis, Tennessee, from approximately September 2008 to February 2010, filed a consent form with the Court expressing his intent to opt in to the class.[1]  King alleges that he, too, was initially employed by FTS in a non-

---

[1]Because conditional class certification had not been granted at the time King consented, he has not effectively opted in to the class. A proposed class member cannot opt in to a class that has not been certified.

4

warehouse position but then began working as a "warehouse supervisor or warehouse manager" in January 2009. (King Decl. ¶ 3.) King alleges that while he was working as a warehouse supervisor or warehouse manager, he was not compensated for overtime that he worked. (*Id.* ¶ 5.)

On April 12, 2010, Pressler filed a motion for conditional certification of a collective action pursuant to § 216(b) of the FLSA. On April 26, 2010, Pressler filed a motion for leave to file a first amended complaint naming Gabriel King as a plaintiff and UniTek Global Services, Inc., as a defendant. FTS has filed responses, and the Court will analyze each motion in turn.

## II.

First, Pressler alleges a violation of the FLSA and seeks conditional certification of an FLSA collective action. The plaintiff's proposed FLSA class includes:

> [A]ll current and former FTS employees who have worked for FTS during the three (3) year period prior to filing of this lawsuit in the following positions: warehouse persons; warehouse manager; and warehouse supervisor, ***and*** who have been classified by FTS as exempt from receiving overtime compensation.

The FLSA authorizes "similarly situated" employees to proceed collectively to recover damages for violations of the FLSA's overtime and record-keeping provisions. 29 U.S.C. § 216(b) (2006). "These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *In re Pilgrim's Pride FLSA Litig.*, MDL Docket No. 1:07CV1832, 2008 WL 4877239, at *2 (W.D. Ark. Mar. 13, 2008) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). The FLSA does not expressly define "similarly situated." "Although the Eighth Circuit has not addressed the issue, this Court and others within the Eighth Circuit have applied the two-step approach set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)." *Helmert v. Butterball, Inc.*, No. 4:08CV00342 JLH, 2009 WL 5066759,

at *3 (E.D. Ark. Dec. 15, 2009) (citing *In re Pilgrim's Pride*, 2008 WL 4877239, at *2; *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005); *Kalish v. High Tech Inst., Inc.*, No. Civ. 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005); *McQuay v. Am. Int'l Group*, No. 4:01CV00661, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002)).  In this two-step approach, the plaintiff moves for conditional certification, and a class is conditionally certified for notice purposes.  *Davis*, 408 F. Supp. 2d at 815.  Then, the defendant is allowed the opportunity to move for decertification at the close of discovery.  *Id.*

To obtain conditional certification, a plaintiff must make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)).  The "plaintiff must come forward with something more than the mere averments in its complaint in support of its claim."  *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992).  However, the plaintiff need not show that members of the conditionally certified class are identically situated.  *In re Pilgrim's Pride*, 2008 WL 4877239, at *3 (citing *Kautsch*, 504 F. Supp. 2d at 689).  "[A] class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members."  *Smith v. Frac Tech Servs., Ltd.*, No. 4:09CV00679, 2010 WL 743296, at *1 (E.D. Ark. Feb. 26, 2010) (quoting *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)).  In other words, the named plaintiff may demonstrate that he and the potential class members held the same job title, worked in the same geographic locations, and were subjected to alleged violations during the same period and based on the same policies and practices.  *Id.* at *3.

FTS argues that Pressler is not similarly situated to members of the proposed class of plaintiffs because he performed both quality control and warehouse duties: he did not work exclusively as a warehouse employee at any time. (*See* Downey Dep. pp. 47-48 (stating that there was no evidence in Pressler's personnel file to support that he was transferred to a warehouse position); Def.'s Ex. A. ¶ 9.)  In support of his motion for conditional certification, Pressler argues that, although he was originally hired as a quality control technician, he began working exclusively as a " 'warehouse supervisor' a/k/a 'warehouse manager' " after Gary Hall was terminated. (Pressler Decl. ¶¶ 5-6.)  "At the notice stage, the Court does not make credibility determinations or resolve contradictory evidence." *Smith*, 2010 WL 743296, at *3. Here, FTS asks the Court to rely on the affidavit and deposition testimony of its designee over the affidavit of the plaintiff.  The Court declines to do so at this stage of the analysis. *See Vaughan v. Mortgage Source LLC*, No. CV 08-4737(LDW)(AKT), 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010) (finding defendants' argument that the plaintiffs did not work over forty hours per week an attack on the credibility of the plaintiffs and declining to address the issue).

FTS also contends that conditional certification is not appropriate since a determination of whether the potential plaintiffs were properly exempt from the FLSA would require an individualized inquiry into each plaintiff's particular work duties.  An FLSA exemption may serve as a defense to an FLSA action.  Two such exemptions are the executive exemption and administrative exemption, which exempt employees from the minimum wage and overtime requirements of the FLSA if they are "employed in a bona fide executive [or] administrative . . . capacity."  29 U.S.C. § 213(a)(1).  "Determining whether an employee is exempt is extremely individual and fact-intensive . . . ." *Diaz v. Electronics Boutique of Am., Inc.*, No. 04-0840, 2005

WL 2654270, at *2 (W.D.N.Y. Oct. 17, 2005). However, as this Court has previously noted, defenses such as the executive and administrative exemptions should be addressed at the second stage of the certification process rather than at the first. *Helmert*, 2009 WL 5066759, at *6; *Bouaphekeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008); *see also In re RBC Dain Rauscher Overtime Litig.*, Civil No. 06-3093 (JRT/FLN), 2010 WL 1324938, at *53 (D. Minn. Mar. 31, 2010) (finding conditional certification appropriate even though a determination of whether each particular employee was exempt from overtime requirements of the FLSA would require a fact-intensive examination of each particular employee's work duties); *Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1024-25 (D. Minn. 2007) (addressing the FLSA exception defenses on a motion for decertification). The defendant cites to *Freeman v. Wal-Mart*, a case from this circuit, to suggest that conditional certification is inappropriate when FLSA exemptions are raised as a defense to an FLSA claim. (Def.'s Br. p.16.) However, in *Freeman*, the district court denied conditional certification not because an exemption defense was raised but because the putative class was unmanageable. 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003); *see also Davis*, 408 F. Supp. 2d at 817 (distinguishing *Freeman* as a case in which the putative class, which involved approximately 7,000 plaintiffs, was unmanageable). Ultimately, the defendant's concern that individualized evidence is necessary to determine whether potential plaintiffs have been considered exempt from the requirements of the FLSA is better addressed at the second stage of the certification process.

Finally, FTS argues that the motion for conditional certification should be denied because the plaintiff cannot say in which warehouse position he worked or how his daily routine was similar to that of potential plaintiffs who held other warehouse positions. In other words, FTS contends that Pressler is not similarly situated to the proposed class because he did not have the same job title as

members of the proposed class, and he cannot prove that warehouse employees with different job titles are similarly situated.  According to his declaration, Pressler began working as the " 'warehouse supervisor' a/k/a 'warehouse manager' " after Gary Hall was fired. (Pressler Decl. ¶ 5.) However, he offers no evidence to suggest that the title of warehouse supervisor or warehouse manager may be used interchangeably.  In fact, the job descriptions that Pressler attached to his motion for conditional certification distinguish between the role of a warehouse supervisor and the role of a warehouse manager.  A warehouse supervisor has duties, responsibilities, and competency requirements distinct from those of a warehouse manager.  The warehouse manager position is classified exempt from the requirements of the FLSA, but since 2009 the warehouse supervisor position has not been classified as exempt.  Furthermore, a warehouse supervisor reports to a warehouse manager, while a warehouse manager reports to a project manager.  Thus, the positions are not the same. To the extent that Pressler claims to have served as both a warehouse supervisor and warehouse manager, he has failed to provide evidence that the proposed class members also served this dual role or are otherwise similarly situated to him.[2]  To the extent that Pressler claims to have served as a warehouse manager,[3] he offers no evidence to suggest that the proposed class members who have served as warehouse supervisors are similarly situated to him.   As a result, Pressler is not entitled to conditional certification on his FLSA claim.

---

[2] Gabriel King stated that he worked as the warehouse supervisor *or* warehouse manager—not as both.  (King. Decl. ¶ 4.)

[3] In his original complaint, Pressler stated that he worked as a warehouse manager, and Elizabeth Downey stated in her declaration that Pressler did some of the work of a warehouse manager.

## IV.

In addition to his motion for conditional certification, Pressler has filed a motion for leave to amend his complaint. Specifically, Pressler seeks to add Gabriel King as a named plaintiff and UniTek Global Services, Inc., as a named defendant. When a party moves the court for leave to file an amended pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court can refuse to allow an amendment only if it will result in "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). There is no absolute right to amend, *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007), and the decision is a discretionary matter for the district court to resolve, *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994) (citing *Corsica Livestock Sales v. Sumitomo Bank of Cal.*, 726 F.2d 374, 377 (8th Cir. 1983)). The burden is on the party opposing the motion to show that it will be unfairly prejudiced if the court grants leave to amend. *Dennis*, 207 F.3d at 525 (citing *Mercantile Trust Co. v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976)).

FTS argues that Pressler should not be allowed to name UniTek Global Services, Inc., as a defendant in this action because it is neither the parent company of FTS nor a legal entity. Rather, UniTek USA, LLC, (d/b/a "UniTek Global Services") is the parent company of FTS. FTS argues that Pressler should not be permitted to name UniTek USA, LLC, as a defendant or Gabriel King as a plaintiff because of undue delay: Pressler could have joined either party to the lawsuit sooner but did not. However, as Pressler points out, his motion for leave to amend the complaint was filed well

before the deadline set by the Court. Document #15. Furthermore, FTS makes no effort to explain how it will be unfairly prejudiced if UniTek USA and King are added as parties. As a result, the plaintiff is entitled to amend the complaint to add UniTek USA, LLC, and Gabriel King as named parties to the lawsuit.

## CONCLUSION

For the reasons stated above, the plaintiff's motion for collective action under the FLSA is DENIED. Document #20. The plaintiff's motion for leave to amend the complaint to name UniTek USA, LLC, and Gabriel King as parties is GRANTED. Document #22. The plaintiff must file the amended complaint within seven (7) days after entry of this Opinion and Order.

IT IS SO ORDERED this 12th day of May, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE