IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

STEPHEN PRESSLER                                        PLAINTIFF

v.                          Case No. 4:09-cv-676-DPM

FTS USA, LLC                                           DEFENDANT

## ORDER

This is the unusual case where the Plaintiff seeks summary judgment
and is entitled to it.  The circumstance arises because, under the Fair Labor
Standards Act, as the employer FTS has the burden of proof on overtime
exemptions.  *Fife v. Harmon*, 171 F.3d 1173, 1174 (8th Cir. 1999).  The Court
must, the parties agree, narrowly construe exemptions.  "[FLSA] exemptions
are to be narrowly construed against the employers seeking to assert them
and their application limited to those establishments plainly and
unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361
U.S. 388, 392 (1960); *see also Ahle v. Veracity Research Co.*, Civil No. 09-42, 2010
WL 3463513, at *2 (D. Minn. 25 August 2010).  Giving FTS the full benefit of
the record, including all reasonable inferences, no reasonable fact-finder could

conclude that the administrative exemption or the executive exemption covered Pressler's work for FTS as a quality control technician, a hybrid quality control technician/warehouse assistant, or as a warehouse manager. *Reedy v. Rock-Tenn Co. of Arkansas*, No. 4:08-cv-413-JLH, 2009 WL 1855544, at *1 (E.D. Ark. 29 June 2009). So Pressler is entitled to judgment as a matter of law on liability.

FTS, on the other hand, is entitled to summary judgment on one aspect of the measure of damages. Pressler testified that he "was under the impression that salary really covered what [he] was doing." *Document No. 71-3.* His overtime payments should therefore be calculated under the fluctuating-workweek doctrine. *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 672–73 & 680–84 (7th Cir. 2010). After oral argument on the motions, Pressler deposed two more individuals and submitted a supplemental brief about damages. Notwithstanding this additional work, there remains no genuine dispute that Pressler thought his salary was full compensation.

**1. The Facts.** On liability, the Court views the record in the light most favorable to FTS, giving it all reasonable inferences. *Reedy*, 2009 WL 1855544,

at *1. Pressler worked at FTS, a company that installed cable for Comcast, for sixteen months. In his quality control position, Pressler reviewed other technicians' installations. Although he had some contact with these technicians and the customers, Pressler's primary duty was to inspect an installation, fill out a form, and send it to his superiors. *Document No. 71-3, at 32.* If a technician's work failed an inspection, then Pressler would ask the technician to try again. *Document No. 71-4, at 16–17.* Pressler would evaluate that second attempt using the standard form. *Ibid.* On occasion, Pressler encouraged technicians who were having problems and visited with his supervisor about technicians who were having lots of problems. Pressler made no recommendations about any technician's work or advancement.

For a short time, Pressler helped the warehouse manager and did quality control work. Then Pressler became the warehouse manager. The person who held this job, including Pressler, was known as the converter-room guy. He occasionally went to corporate meetings with the Comcast "bigwigs." *Document No. 71-3, at 29.* Pressler's primary duties, however, were distributing cable boxes and other equipment to technicians and making sure the warehouse was stocked. Pressler could recommend technicians for

discipline. *Document No. 71-4, at 10.* And the technicians reported to Pressler. *Document No. 71-4, at 5.* Pressler was primarily responsible for "millions of dollars in cable installation equipment and the FTS fleet of vehicles." *Document No. 66, at 4.*

**2. Pressler's Motion on Liability.** Pressler was a salaried employee. Because he allegedly worked more than forty hours per week during his employment, FTS owes Pressler overtime, 29 U.S.C.A. § 207(a)(1) (West 1998), unless Pressler worked "in a bona fide executive [or] administrative" capacity. 29 U.S.C.A. § 213(a)(1) (West 1998).

**Executive exemption.** The executive exemption applies if (1) Pressler's primary duty is in management, (2) he customarily and regularly directs the work of two or more employees, and (3) he has the authority to hire and fire, or make suggestions and recommendations about other employees that are given particular weight. 29 C.F.R. § 541.100(a).

As a quality control technician, Pressler's primary duties were not in management. He did not control the flow or distribution of materials or merchandise and supplies. 29 C.F.R. § 541.102. Instead, he checked others' work using a standard form.

-4-

Pressler did not direct the work of two or more technicians. Elizabeth Downey, the Chief Administrative Officer for FTS's parent corporation, testified that Pressler "supervise[d]" technicians. *Document No. 71-2, at 3.* Mike Brooks, President of FTS, also said that Pressler "supervised" the technicians. "He was out in the field in charge of the tech[nicians'] quality and their job performance . . . . He was out inspecting the work and counseling them if their work was not up to par." *Document No. 71-1, at 4–5.* Both Downey and Brooks, however, gave admittedly general testimony about what quality-control technicians usually did. Neither individual knew anything about Pressler's actual work in Little Rock; both disclaimed any personal knowledge about Pressler's particulars. Both Downey and Brooks deferred to Pressler's supervisor, Anthony Louden, about the specifics of Pressler's job.

According to Louden, Pressler was not responsible for any discipline as a quality control technician. *Document No. 71-4, at 17.* Instead , Pressler filled out a form outside the technicians' presence. Even when a bad mistake was made, Pressler only told the technician to redo the project and checked the work—again outside of the technicians' presence—after the technician's

second attempt. *Document No. 71-4, at 17*. In Pressler's own words, "after I turned my forms in, it was kind of out of my hands." *Document No. 71-3, at 6*. There is no genuine dispute about Pressler's lack of supervisory duties.

Finally, Pressler did not have the authority to hire or fire the technicians. His form evaluation was relevant to their advancement. The form, however, had no place for Pressler to make "suggestions and recommendations." And there is no evidence that any evaluation Pressler may have made informally was given "particular weight" in management decisions about technician advancement. 29 C.F.R. § 541.105.

As a warehouse manager, Pressler's primary duties were about management—he managed equipment, not other employees. The technicians did report to Pressler, but only so Pressler could "reconcile" their equipment. *Document No. 71-4, at 5–6*. Pressler made no suggestions or recommendations about other employees, except to recommend discipline for failures to follow company policy. There is no record evidence, moreover, that Pressler's recommendations were given "particular weight," or that he ever recommended an employee for discipline.

The warehouse manager job description details many managerial duties. *Document No. 66, at 3–4.* There is no proof in the record, however, that Pressler's actual duties reflected his job description. Although he was labeled a manager, Pressler's was considered the converter-room guy. *Document No. 71-4, at 3–5.* His informal job title, conferred by folks who worked with him, tells.   FTS has failed to show a genuine dispute about the executive exemption. *Fife,* 171 F.3d at 1174.

**Administrative exemption.** The administrative exemption applies if (1) Pressler's primary duty was "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (2) Pressler's job included "the exercise of discretion and independent judgment with respect to matters of significance."   29 C.F.R. § 541.200(a)(2) & (3).

Pressler's quality-control work was non-manual work directly related to FTS's operations.   "Work directly related to management or general business operations includes, but is not limited to, work in . . . quality control[.]" 29 C.F.R. § 541.201(b). But there is no genuine dispute that Pressler exercised no discretion or judgment about matters of significance. Pressler's

evaluation using a standard form was ordinary inspection work.

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits.

29 C.F.R. § 541.203(g). According to Louden, Pressler was "just doing ordinary inspection work out in the field[.]" *Document No. 71-4, at 18.* There is no genuine dispute that Pressler failed to exercise discretion beyond having some "leeway" within "closely prescribed limits." 29 C.F.R. § 541.203(g).

As a warehouse manager, Pressler's duties primarily involved manual labor—he moved equipment, helped "break down" boxes, and swept the floor. *Document No. 71-4, at 7.* Pressler had no discretion about what equipment the warehouse stocked. That was the unequivocal testimony of Pressler's supervisor.

> [Question:]     Who decides what equipment [the warehouse manager] picks up on any given day at Comcast?
>
> [Answer:]     Comcast makes that decision.

*Document No. 71-4, at 5.*  As the warehouse manager/converter-room guy, Pressler exercised no discretion.  His day-to-day duties were, for the most part, routine.  29 C.F.R. § 541.202(e).  FTS has not carried its burden and created a genuine factual dispute on the administrative exemption. *Fife*, 171 F.3d at 1174.

**3.  FTS's Motion on Damages.**  FTS moves for partial summary judgment because Pressler "admittedly understood that his fixed weekly salary covered all of the hours he worked, including any hours worked in excess of forty per week[.]" *Document No. 58, at 1.*

The parties argue about the appropriate legal standard.  FTS cites the Seventh Circuit's recent and thorough *Urnikis-Negro* decision.  616 F.3d 665 (7th Cir. 2010).  Pressler tried hard to distinguish *Urnikis-Negro* at the hearing. And the Court requested additional briefing.  Pressler's latest brief, however, makes no further argument about *Urnikis-Negro*.

The Court will follow the Seventh Circuit's lead.  This Court's "job is to apply the statue as Congress has written it and as the Supreme Court and the Department of Labor have interpreted it."  616 F.3d at 684.  An employee's regular rate of pay is the "keystone" of 29 U.S.C. § 207(a).  In calculating

Pressler's damages, the Court will therefore divide his salary by fifty-two (the number of weeks in a year), and then divide that weekly rate by the number of hours the salary was intended to compensate. 29 C.F.R. § 778.113(a); *Urnikis-Negro*, 616 F.3d at 673.

With the Court's permission, Pressler deposed Yvette Shockman and David Conn after the hearing because a couple of internal documents indicated "40" or "80" as the number of "salary units" for Pressler. Pressler argued that these entries created a genuine issue about the amount of hours his salary was intended to cover. But Pressler testified that he "was under the impression that salary really covered what [he] was doing[.]" *Document No. 71-3, at 15.* And on deposition, both Shockman and Conn confirmed their earlier declarations: the "40" or "80" was a placeholder, and had no significance. *Document No. 95-1, at 13–15; Document No. 95-2, at 9–10.* There is no genuine dispute, therefore, that the parties intended for Pressler's salary to cover all the hours he worked. The fluctuating-workweek doctrine applies.

**4. Motion *in limine*.** FTS moves to exclude Pressler's hand-written calendar from evidence as inadmissible hearsay. Pressler resists citing three hearsay exceptions. *Document No. 94, at 3–5.* The Court has an insufficient

record on which to rule at this point. The Court is a bit inclined, however, to allow Pressler to testify from the calendar as a recorded recollection if Pressler lays an adequate foundation. FED. R. EVID. 803(5). The other exceptions forwarded by Pressler seem less applicable.

*  *  *

Pressler's motion for partial summary judgment, *Document No. 56*, is granted. FTS's motion for partial summary judgment, *Document No. 58*, is also granted. FTS's motion *in limine, Document No. 90,* is denied without prejudice.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

9 December 2010

-11-